## W. L. Marchand v. F. X. A. Perrin.

Opinion filed February 3, 1910.

### Appeal and Error—Refusal to Strike Out Counterclaim—Error Without Prejudice.

1. In an action by a contractor to foreclose a mechanic's lien for a balance claimed to be due under an express contract, the answer puts in issue the allegation of the complaint to the effect that plaintiff had substantially performed the contract, and also pleads four alleged counterclaims. At the trial plaintiff's counsel moved to strike out certain of such counterclaims and certain portions of others. The trial court granted such motion in part and denied the remainder.

*Held*, for reasons stated in the opinion, that such rulings were nonprejudicial.

### Foreclosure of Mechanics' Lien—Sufficiency of Evidence.

2. The finding of the trial court that the building erected by plaintiff for defendant under the contract, was not built and completed in a good, substantial, and workmanlike manner, but was built and erected in a careless, negligent, unskillful, and unworkmanlike manner of inferior material, held amply supported by the testimony.

### Contracts—Failure of Substantial Performance—Waiver.

3. Plaintiff, having failed to prove a substantial performance of the contract on his part, cannot recover anything under the contract where defendant is not shown to have waived such performance.

### Substantial Performance of Contract Not Waived.

4. Evidence examined and held insufficient to show such waiver.

### Contracts—Failure of Substantial Performance—Waiver.

5. The mere fact of making certain payments and taking possession of and occupying the building does not of itself amount to such waiver or estop defendant from urging nonperformance of the contract on plaintiff's part.

Appeal from District Court, Bottineau county; *Templeton*, J.

Action by W. L. Marchand against F. X. A. Perrin. Judgment for defendant, and plaintiff appeals.

Affirmed.

*A. Besancon,* for appellant.

Where one executes work according to contract, and the request of the other contracting party, it is sufficient. 30 Am. & Eng. Ency. Law 1236.

Substantial performance sufficient. 301 Am. & Eng. Ency. 1221; Hahn v. Bonacum, 107 N. W. 1001; Leeds v. Little, 42 Minn. 414, 44 N. W. 309, 80 N. Y. 312; 81 N. Y. 211; Crouch et al. v. Gutmann, 31 N. E. 271; 30 Am. St. Rep. 608.

Where extra work is necessary by owner's mistake, contractors can have both compensation and lien. 30 Am. & Eng. Enc. Law 1283; 51 Ill. 422; 93 Mass. 152.

*Weeks, Murphy & Moum,* for respondent.

Part payment of purchase price, and use and occupancy of building do not waive completion of contract. 6 Cyc. 54, note 52; 6 Cyc. 67 to 69 and note 28; Anderson v. Todd, 8 N. D. 158, 77 N. W. 599; Baders v. Davis, 88 Ala. 367, 6 So. 834; Morrison v. Cummings, 26 Vt. 486; Eaton v. Gladwell, 66 N. W. 598.

Full and substantial performance of contract essential to recovery or benefit of lien. 9 Cyc. 759; U. S. v. Robeson, 9 Pet. 319; 9 L. Ed. 142; Hitchcock v. Davis, 49 N. W. 912; Anderson v. Todd, supra.

Fisk, J. This is an action primarily for the foreclosure of a mechanic's lien, and appellant desires a review of the entire case in this court.

The complaint is in the usual form, alleging, among other things, that on April 13, 1906, the parties entered into a written contract, by the terms of which plaintiff agreed to construct for defendant at Willow City, a certain concrete building for the consideration of $4,550. It is also alleged that, pursuant thereto, plaintiff constructed such building, and in the construction thereof he furnished at defendant's special instance and request, certain extras on account of changes and alterations in the original plans and specifications, which extras were reasonably worth $669.37, and which sum defendant promised to pay. After deducting credits for payments made, plaintiff claims a balance due him under such contract $3,302.68, for which a lien is claimed and a foreclosure thereof prayed for. The complaint also alleges that, as part payment under the contract, defendant agreed to convey to plaintiff certain real property therein described at an agreed valuation of $2,050, and a specific performance of this portion of the contract is also prayed for. The gist of the defense, as stated in the answer, is that plaintiff failed to construct such building in a good and workmanlike

manner, and has not completed the same in several specific particulars. In brief, the defense alleged is a failure on plaintiff's part to substantially perform the contract, the answer alleging, in detail, many material imperfections in the structure and deviations by plaintiff from the contract. In addition to the defensive matter, the answer contains four alleged counterclaims, but which we need not notice except as we are required so to do in passing upon certain rulings of the trial court on motions of plaintiff to strike out such counterclaims or portions thereof. In view of the fact that the trial court merely tried the equitable issues raised by the pleadings, expressly reserving, with the implied consent of counsel, the legal issues for future trial, and as a consequence we are called upon by this appeal merely to review and determine such equitable issues, we need not consider such rulings only to the extent that they affect the equitable issue aforesaid. Such alleged counterclaims contain much evidentiary matters, both of a defensive and affirmative nature, which no doubt are improperly pleaded, but we discover no prejudicial error in the rulings complained of. Appellant could not have been prejudiced by a refusal to strike out the allegations of a defensive character, which he asks to have stricken out, as such allegations, so far as competent, material and relevant to the issues tried, could all have been proved under other portions of the answer.

Turning our attention to the merits, we are confronted with a great mass of testimony covering 728 pages of the printed abstract. A detailed review of such testimony in this opinion is manifestly both impracticable and useless, and we shall not attempt it. We shall merely in a general way refer to such testimony, giving our conclusions as to ultimate and controlling facts which we deem established, and apply thereto well-settled rules of law. The contract required plaintiff to construct such building in a good, substantial and workmanlike manner of certain designated dimensions and materials. The learned trial court found, and we think such findings in accordance with the clear preponderance of the testimony, that the building "was not built and completed in a good, substantial and workmanlike manner, but that said building was erected in a careless, negligent, unskillful, and unworkmanlike manner of inferior material." That such finding has ample support in and is fully justified by the testimony we are fully agreed.

Plaintiff himself testified as follows: "Q. Did you notice any cracks on the west side of the building? A. On both sides. Q. Did you see cracks on the west where you could see daylight? A. Yes, sir. Q. Was it long, extending from the top to the bottom? A. Yes, sir. Q. You found a great many cracks? A. Yes, sir. Q. Did you take a stick to see whether you could dig holes in it? A. Yes, sir. Q. Could you? A. Yes, sir; I could with any kind of a wall. Q. Did you take a lead pencil and dig holes? A. I tried my finger. Q. Could you dig a hole with your finger? A. Yes, sir. Q. It was crumbly? A. Yes, sir. Q. You could take a piece in your finger and crumble to dust? A. Yes, sir. Q. Was it that way in different parts of the wall? A. About the same. Q. Did you find cracks on the west, south, east, and north sides? A. Yes; all along. Q. How wide were these cracks? A. Some very small, and some about half an inch. * * * Q. Do you know whether or not that building is standing plumb at the present time, those walls? A. It is not exactly plumb. Q. Which wall did you find worse in regard to being plumb—the east or the west side? A. The east side. Q. Is the west side out of plumb also? A. No; it is pretty plumb. Q. Estimate about how much out of plumb the east wall is? A. About an inch and a half. Q. Which way does the wall lean? A. It was bulged. Q. Is the crack running along the wall along where the bulge is? A. Yes, sir. Q. Runs from the front clear to the back? A. No, sir; not from the front. Q. Almost the full length of the building? A. About half the length. Q. And besides that a crack runs from the top to the bottom, up and down? A. Yes, sir. * * * Q. Is the surface of the wall also crooked? A. It is straight enough. Q. It is not a straight surface or level? A. It bulges, too, it is not smooth. The wall is not straight. Q. Did you notice where the wall itself was bulged? A. Yes, sir. Q. How is the west wall, it is bulged? A. It is bulged, and the east wall is bulged." It is true plaintiff stated that he considered the structure a good building the way it stands.

The witness Sholl, a general contractor and builder of 12 or 13 years' experience, testified that he examined the building in June, 1907, and again just before the trial, and gave it as his opinion that the material was poor. Witness by using the end of his rule dug into the wall and took out certain chunks of the cement which were

introduced in evidence. Said he had no difficulty in making a hole with the end of the rule to take out these pieces, and said it was an easy matter to dig a hole through the wall with such rule. He says the wall was poor and the material therein would easily crumble; that "by taking it between your fingers you could pulverize it." In speaking of the bulges in the walls, the witness stated: "About 64 feet from the rear I started to put my plumb up and 4 feet from the top of the foundation I found a bulge and also a crack. It bulged out 4 inches, about 1 inch on a foot, and, going up 13 feet, I found a bulge going in again 6 inches. Q. That was all on the east side of the building? A. Yes, sir." He says the wall was cracked in one place about 70 feet or so, and such crack went entirely through the wall. He also testified to other numerous cracks and imperfections in the walls of the building.

The witness Higgins, a contractor and builder and familiar with cement and concrete materials, testified that he examined the building, and found the walls very much out of plumb and badly cracked. He says the material was very poor, and with a soft stick he was enabled to bore into the wall at three or four different places, and that such wall was soft, and he drilled a hole through the concrete without any trouble. Says that it took him possibly 30 seconds to bore through the wall with a pine stick. He says he made such tests all over the building, and they indicated very poor material, very poor concrete, and he thinks too much sand and gravel was used and not enough cement, and that the cement used was of an inferior grade and the gravel of a poor quality.

The witness Bowen also testified to the numerous cracks in the walls and to the brittle nature of the material. He says he could run his lead pencil in some of the cracks, and that "you could pulverize pieces of the concrete in your fingers." He corroborates fully the witness Higgins as to the defective character of the walls.

The architect, Shannon, a witness for plaintiff, testified that the concrete is not a good grade. When asked if he would call it a very poor grade, he answered: "I have seen poorer. I wouldn't call it very poor, but I would call it a poor grade." He was asked: "Would you call Exhibits 2 and 3 (concrete) sufficient for a two-story buiding? A. Not if it is all that kind; I would not. Q. And if some was worse than that, and in some places it was a little better, would you consider it safe for a building two stories high, such

as the Perrin building?   A.   I would not." At another place this witness testified as follows: "Q.   Would you consider a concrete wall in which you could bore a hole with a common pine stick a good quality of concrete?   A.   I wouldn't call that good concrete. Q.  That wouldn't be fit for any building?  A.  No, sir.  Q.  It would be practically worthless and a dangerous wall?   A.   Yes; if it was all like that.  Q.  Yes, or any of the material, part of it, even half, like that?     A.   Yes, sir.   Q.   And if any of it was like that it wouldn't be a proper wall built of concrete?     A.   No, sir."

The witness Ross, an architect and builder of many years' experience examined the building in October, 1906, at the request of the authorities of Willow City, and he testified that the walls were badly cracked, buckled and out of plumb.   He examined the foundation and found no checks or cracks that would effect the superstructure, and he considered such foundation sufficient.   Later he examined the building carefully, and found the walls in still worse condition than on his first examination, and he gave it as his opinion that the walls of the building are liable to collapse, and that the structure is dangerous.   He again examined it on the day that he gave his testimony, and found its condition worse.   He was asked: "Q.   Is it a safe building now, Mr. Ross?" to which he answered: "No; by no means.   Q.   As it stands there will it ever be a safe building?   A.   No, sir."   And he says that the building is not only worthless, but a detriment to the lot on which it stands.

There is much more testimony in the case in corroboration of the foregoing, but it would serve no useful purpose to refer to it.   Suffice it to say that from an examination of all the testimony we have no hesitancy in approving the findings of the trial court as to the defective material and workmanship in such building.   Plaintiff attempted to show that the condition of the walls was caused by a faulty construction of the foundation which was furnished by defendant, but in this he is not supported by the preponderance of the proof.   Plaintiff, having failed to establish a substantial performance of the contract on his part, cannot recover in this action, which is based on such contract, unless it appears by a preponderance of the evidence that defendant in some manner waived such substantial performance.   Anderson v. Todd, 8 N. D. 158, 77 N. W. 599; 9 Cyc. 759; 6 Cyc. 54, and cases cited.   We find nothing in the evidence to warrant a finding that defendant waived the provisions of

the contract to the effect that such building was to be constructed of good material and in a substantial and workmanlike manner. The fact that defendant went into possession of the building prior to its completion, and has occupied the same, cannot be considered as a waiver of latent defects therein. Anderson v. Todd, supra; 6 Cyc. 54, 67-70. Appellant cites and relies upon 30 Am. & Eng. Ency. of Law, 1232-1233, and cases cited, also Katz v. Bedford, 77 Cal. 319, 19 Pac. 523, 1 L. R. A. 826, and Gier v. Daiber, 148 Mich. 190, 111 N. W. 773, in support of his contention that defendant by making certain payments under the contract and by taking possession and occupying the building thereby waived any defects and estopped himself from urging any defense to plaintiff's recovery. The authorities cited do not support such contention, but merely announce the general rule upon the subject as recognized and applied by this court in Anderson v. Todd, supra.

The trial court refused defendant's first proposed conclusion of law, "That defendant is not indebted to the plaintiff in any sum whatever," but found his second proposed conclusion, "That the plaintiff is not entitled to a lien against the property described herein," and appellant urges that such rulings are inconsistent. To this we cannot assent. The learned trial court in refusing the first proposed conclusion no doubt merely intended to refrain from deciding issues not before it. If the plaintiff had requested the court to find as a conclusion of law that defendant is not indebted to the plaintiff upon the contract in question in any sum whatever, such request no doubt would have been granted. It is apparent that the trial court merely intended to, and did, hold that there was nothing due plaintiff under the contract, leaving open for future consideration the question of the defendant's liability in an action on the quantum meruit, should such an action be brought.

In conclusion, suffice it to say that we are entirely satisfied with the findings and conclusions of the trial court (and the same as adopted by this court). It follows that the judgment appealed from must be, and the same is hereby, affirmed. All concur.