# F. W. McLEAN v. NEWS PUBLISHING COMPANY.

## (129 N. W. 93.)

**Master and Servant — Action for Breach of Contract of Employment — Admissibility of Evidence.**

1. Plaintiff entered into the employment of defendant under a contract whereby, in consideration of a salary of $1,800 per year and one half of the net profits of the business, plaintiff was to assume the management of defendant's business at Fargo, which consisted in the printing, publishing, and circulating of the newspapers published by defendant. Such contract was to continue for six years. At the time of entering into such contract, plaintiff was a resident of Langdon, this state, engaged in the general practice of law, his business netting him $2,500 per year. Immediately upon entering into the contract, plaintiff abandoned his law business at Langdon, and moved his family to the city of Fargo, where his duties under the contract were to be performed. Thereupon he entered upon the discharge of his duties under the contract, and faithfully performed the same for the period of nearly three months, at which time it is alleged that defendant wrongfully and without cause discharged the plaintiff.

In an action to recover damages for such wrongful discharge, plaintiff offered to prove his reasonable expenses in moving from Langdon to Fargo, and also what his services were worth, and, as a circumstance tending to prove the latter fact, he offered to show his earning capacity at Langdon at the time he entered into the contract, which offer was rejected. *Held*, error, for reasons stated in the opinion.

In view of the fact that a portion of plaintiff's compensation under the contract was to be a share of the net profits, and such prospective profits being too uncertain and conjectural to be susceptible of approximate measurement, the only proper rule for measuring plaintiff's damage to be applied is that

Note.—The general question of measure of damages for servant's wrongful discharge is considered in a note in 43 Am. Dec. 209.

he may recover the amount which he has been induced to expend on the faith of the contract, including a fair allowance for his own time and services.

**Master and Servant — Wrongful Discharge of Servant — Damages — Estoppel.**

2. It does not lie in the mouth of the party who has voluntarily and wrongfully put an end to a contract of employment, to say that the party injured has not been damaged, at least, to the amount of what he has been induced fairly and in good faith to lay out and expend, including his own services. He is estopped from denying that the injured party has not been damaged to the extent of his actual loss and outlay fairly incurred.

Opinion filed November 19, 1910.

Appeal from District Court, Cass county; *Chas. A. Pollock*, J.

Action by Fred W. McLean against the News Publishing Company. There was a directed verdict for plaintiff granting inadequate relief, and he appeals from an order denying his motion for judgment notwithstanding the verdict or for a new trial.

Reversed, and a new trial granted.

*M. A. Hildreth,* for appellant.

FISK, J. This litigation grows out of an alleged breach by defendant, the News Publishing Company, of the following contract:

"This agreement entered into this 31st day of December, 1908, by and between the News Publishing Company, a corporation, of Fargo, North Dakota, party of the first part, and F. W. McLean, of Langdon, North Dakota, party of the second part.

"Witnesseth, That the party of the first part has this day employed the party of the second part for a period of six years to act as its business manager in printing, publishing, and circulating the various newspapers published by the party of the first part, and hereby agrees to pay to said party of the second part a yearly salary of eighteen hundred dollars, to be paid in monthly instalments of one hundred fifty dollars per month.

"The party of the first part hereby agrees, after the debts of the corporation are paid, to set aside at the close of each business year fifty per cent of the profits earned in the business during the current year, after deducting operating expenses, and to invest the same in capital stock of the company at its par value and to issue paid up capital

stock in the amount of the sum so set aside for that year or buy therewith of the company at its par value for the party of the second part.

"The party of the second part hereby contracts to render to said party of the first part skilful services in the capacity in which he is employed, and agrees to devote his entire time and ability to the management of the business of the party of the first part, hereby committed to his charge, and in the management of said business agrees to conform to the requirements of the articles of incorporation and the by-laws of the said party of the first part.

"The board of directors of the party of the first part shall determine and control the policy of the paper, but, subject to such control, the said party of the second part shall have complete charge of the said business of the party of the first part, and shall have full authority to carry out the policy of the paper as outlined by the board of directors, and shall be accountable to the said board alone for the acts done by him in that behalf.

"The party of the first part hereby agrees to cause the capital stock to be increased to $50,000, and agrees to provide a guaranty fund of at least $35,000 to finance the business of said party of the first part for a period of three years.

"The said party of the first part further agrees that the party of the second part shall have the right, so far as it can be given and assured to him by the board of directors, to purchase a majority of the capital stock of the party of the first part at the par value thereof at the time of purchase, and agrees to assist said party of the second part in securing an option on a majority of said stock.

"It is further agreed that either of the parties hereto reserves the right to terminate this contract at any time upon the failure or refusal of either party to perform any of its or his agreements herein contained.

"In witness whereof, the said corporation has caused these presents to be executed in its corporate name by its president and secretary, and its corporate seal to be hereunto affixed this 31st day of December, 1908."

Among other things the complaint, in substance, alleges: That pursuant to the terms of said contract, plaintiff surrendered up his business as an attorney at law at Langdon, and entered into the service.

of the defendant as its editor and manager on January 9, 1909, and continued to render and perform services thereunder in conformity with the provisions of such contract up to and including March 29, 1909, at which time, without fault on his part, defendant wrongfully and without cause discharged plaintiff, canceled said contract, and refused on its part to keep and perform the covenants therein agreed to be performed. It is alleged in the complaint, and admitted in the answer, that a balance of $185.15 was due plaintiff on said date on account of stipulated salary to be paid by the contract. The complaint further alleges: That by reason of such contract plaintiff was induced and did abandon his law business at Langdon, which was netting him an income of $2,500 a year, and incurred the expense of moving his family from Langdon to Fargo at a necessary expense of from $300 to $350, and he demands judgment for the sum of $185.15, and also for damages in the sum of $2,850 on account of the breach of such contract by defendant.

By its answer defendant admits the execution of the contract aforesaid, and that plaintiff surrendered up his business as an attorney at law at Langdon, moved his family to Fargo, and entered into the service of the defendant under such contract as the manager of said publishing company, and that he remained in such capacity from January 9 to March 29, 1909, but such answer, in other respects, places in issue the allegations of the complaint.

At the trial plaintiff made the following offer of proof: "Plaintiff offers to prove by competent testimony that he entered into the contract—Exhibit A—in good faith, was at all times ready and willing to keep and perform it, and entered upon the performance of the contract in January, 1909; that in March, 1909, the defendant wilfully broke it, dispossessed him from the management of the business, and made a lease to third parties, and installed them in the operation of the business. The plaintiff is not in position to prove whether there be any profits or not arising from said business, because the lease was made between the defendant and third parties, of which he has no knowledge; that he was earning from his law business at Langdon the net sum of $250 a month, and that it was known at the time by the defendant that he was earning approximately that; that he had had experience as a newspaper man, had been a journalistic writer,

and that it was an inducement on his part to enter into the contract, under the terms which he did, to leave the law business at Langdon and come to Fargo to take charge of the management of said defendant's business; that he incurred an expense in moving himself and family to the city of Fargo of from $300 to $350; that he was ready and willing at all times to perform the said contract and carry out its terms in good faith; that there was no reason or excuse whatsoever for the violation of said contract upon the part of defendant, and that defendant pretended on its records to pass a resolution which was false and known to be false at the time, for the purpose of getting rid of the plaintiff and his rights and interest under said contract; that between the 17th day of March and the present time the profits arising from said business are uncertain and incapable of being established, because defendants have a secret agreement with the lessee, whose terms are not known to plaintiff, or whether there are profits arising from the management of said business; that he had to give up his law business; and come to the city of Fargo by reason of entering into said contract; that he entered into said contract, because of the fact that he was induced to believe that defendant would carry out the terms of its agreement in its entirety; that he severed his partnership relations with Judge Cleary, at Langdon, closed his partnership business, and abandoned his law business, and has not since then practised law either in Langdon or elsewhere; that after the violation of said contract by defendant, and after plaintiff was refused permission to carry on said business, he made an effort to get into the same business or other employment of like character, and has been unable to do so."

This offer of proof was objected to by defendant's counsel, upon the ground that the testimony offered was incompetent, irrelevant, and immaterial, which objection was sustained and plaintiff excepted. Thereupon the court instructed the jury to find a verdict for the plaintiff for $185.15, with interest from March 17, 1909, at 7 per cent. Thereafter a motion for judgment notwithstanding the verdict or for a new trial was made by plaintiff and denied, and the appeal is from the order denying such motion.

The assignments of error present for our determination the question as to the proper measure of damages for the breach of the con-

tract.   The proper rule to be adopted for measuring plaintiff's dam-
age is, we confess, not entirely clear, and the question has given us
considerable difficulty.   The general rule is prescribed by our Code as
follows:   "For the breach of an obligation arising from contract,
the measure of damages  . . .  is the amount which will compen-
sate the party aggrieved for all the detriment proximately caused there-
by, or which in the ordinary course of things would be likely to re-
sult therefrom.   No damages can be recovered for a breach of contract
which are not clearly ascertainable in both their nature and origin.'"
Rev. Codes 1905, § 6563.

Appellant does not seek to recover any damage for prospective profits
under the contract, but expressly concedes that such damages are too
uncertain and speculative to be capable of measurement.   He, however,
insists that he is entitled to recover the damages suffered by him in
abandoning his established law business at Langdon and in incurring
certain expenses in moving to Fargo necessitated by the contract in
question.

The only sum which he was permitted to recover in the trial court
is a balance conceded to be due him under the stipulation in the con-
tract, whereby he was to receive, in addition to a share of the profits,
$1,800 per year.   In other words, the logical effect of the ruling com-
plained of is that if the stipulation aforesaid were not in the contract,
but plaintiff was merely to receive for his services in the management
of such business a certain share of the net profits thereof, he could re-
cover nothing on account of defendant's wilful and wrongful breach
of the contract.   To deny him any redress under the facts which he
offered to prove would, we think, be a reproach upon the law.   It must
be conceded that the small recovery permitted by the court below is in
no sense an adequate compensation for the detriment caused by the
breach of the contract.   It is merely a portion of the compensation
stipulated for in the contract.   For all we know, the stipulated amount
to be paid plaintiff may be a minor portion only of the contemplated
compensation which he was to receive under the contract.   The share
which he was to receive in the net profits of the business, perhaps, may
have formed the chief inducement to the contract.

· Just what theory plaintiff's counsel proceeded on in bringing the
action, and in making the offers of proof at the trial, is not plain.

Plaintiff had an election to treat the contract as·rescinded on being discharged, and to recover on a *quantum meruit* for the services actually rendered, or he might sue on the contract and recover damages, including the wages earned, to the amount of the actual loss sustained, in so far as the same is susceptible of proof. He cannot, however, avail himself of both of these remedies. 3 Sutherland, Damages, 3d ed. § 692. As we construe the complaint, plaintiff has elected to sue on the latter theory. What, then, is the true measure of defendant's liability? If the only stipulated compensation was a certain designated salary, the answer would not be difficult. 3 Sutherland, Damages, § 692; 13 Cyc. Law & Proc. pp. 155–161. The learned author of Sutherland on Damages says: "The recovery in such a case should be the fair and reasonable present value of the contract, or, as more fully stated in a later case, the amount which would have been earned up to the time of the trial but for the master's wrongful act, and the present worth of what the servant would be able to earn in the future so long as he would, in the ordinary course of events, be able to perform the stipulated service, less any sums he would be able to earn in other employments." The fact that a portion of the stipulated compensation. is prospective profits, which are incapable of being even approximated,, requires the application of a different rule.

In United States v. Behan, 110 U. S. 338, 28 L. ed. 168, 4 Sup. Ct. Rep. 81, Mr. Justice Bradley announces a rule which we deem applicable to the case at bar, as follows: "When a party injured by the stoppage of a contract elects to rescind it, then, it is true, he cannot recover any damages for a breach of the contract, either for outlay or for loss of profits; he recovers the value of his services actually performed as upon a *quantum meruit*. There is then no question of losses or profits. But when he elects to go for damages for the breach of the contract, the first and most obvious damage to be shown is the amount which he has been induced to expend on the faith of the contract, including a fair allowance for his own time and services. If he chooses to go further, and claims for the loss of anticipated profits, he may do so, subject to the rules of law as to the character of profits. which may be thus claimed. It does not lie, however, in the mouth of the party, who has voluntarily and wrongfully put an end to the contract, to say that the party injured has not been damaged at least.

to the amount of what he has been induced fairly and in good faith to lay out and expend (including his own services). . . . The party who voluntarily and wrongfully puts an end to a contract, and prevents the other party from performing it, is estopped from denying that the injured party has not been damaged to the extent of his actual loss and outlay fairly incurred."

In Skinner v. Tinker, 34 Barb. 334, plaintiff sued to recover damages for the breach of a contract for the formation of a partnership. Plaintiff, a dentist at Brooklyn, and defendant, a dentist at Havana, Cuba, entered into a contract to engage in the dentistry business at Havana. The agreement was silent regarding the duration of the partnership. Plaintiff sold his business at Brooklyn, and made preparations for carrying out his agreement. Afterwards he received a letter from defendant, declining to carry out the contract. Plaintiff claimed that he had suffered large damages by reason of the defendant's violation of the agreement. At the trial he proved such agreement, the sale of his business at Brooklyn; the defendant's refusal to perform, his readiness and offer to perform, and the damages plaintiff had sustained by reason of defendant's violation of the contract. Prospective damages were not permitted, but plaintiff's recovery in the sum of $4,000, as damages up to the time the contract was broken by defendant, was sustained.

In Johnson v. Arnold, 2 Cush. 46, which was an action to recover damages for the breach of special contract by which defendant agreed to furnish and keep the plaintiff supplied with a stock of goods for carrying on business at defendant's store in another state, and plaintiff undertook to carry it on for a share of the profits for a given term, it was held competent, in estimating the damages, to allow plaintiff compensation for the loss of his time, and for the expenses of removing his family to and from the place where the business was to be carried on. To the same effect, see Moore v. Mountcastle, 72 Mo. 605, where plaintiff was allowed to recover for loss of time and expense in going to perform a contract. This same doctrine is affirmed in Woodbury v. Jones, 44 N. H. 206. In Wilson Sewing Mach. Co. v. Sloan, 50 Iowa, 367, it was held that the measure of damages for the breach of a contract for the exclusive sale of an article of merchandise is the value of the agent's time during the period he was em-

ployed under the contract, with reasonable expenses added and diminished by the sum actually earned. In Meylert v. Gas Consumers' Benefit Co. 26 Abb. N. C. 262, 14 N. Y. Supp. 148, it was held that a sole agent for the sale of a patented article within a specified territory, who had abandoned his profession as a physician, and devoted his entire time to the business of the agency, in reliance on his contract with the manufacturers, is entitled to recover from them for their total breach of the contract to furnish him with the articles, not only the amounts which he actually expended in the business of the agency, but also the earnings which the evidence reasonably establishes he otherwise would have made from his profession. To the same effect, see Howe Mach. Co. v. Bryson, 44 Iowa, 159, 24 Am. Rep. 735.

We think the plaintiff was entitled to recover as an element of his damage what his time was reasonably worth up to the time of the breach of the contract, less, of course, the amount received by him, and that the offered proof of his earning capacity, at the time he entered into the contract, in his law business at Langdon tended to furnish some proof as to such value; hence it was error to deny this offer of proof. We also think plaintiff was entitled to recover the actual and reasonable expense incurred by him in moving to Fargo, as such expense was fairly within the contemplation of the parties at the time the contract was entered into. It was therefore prejudicial error to deny plaintiff's offer of such proof.

The order appealed from is reversed, and a new trial granted, appellant to recover his costs of the appeal. All concur.