Richard COOK and Edith Cook,
Plaintiffs and Appellees,

v.

JACKLITCH & SONS, INC., and LeRoy
Jacklitch, Defendants, Third-Party
Plaintiffs and Appellants,

v.

Roger WALDEN, Third-Party Defendant.

Civ. No. 10030.

Supreme Court of North Dakota.

Feb. 11, 1982.

Bailey & Lies, Wahpeton, for plaintiffs and appellees; argued by Colin A. Bailey, Wahpeton.

Smith & Strege, Wahpeton, and Ohnstad, Twichell, Breitling, Arntson & Hagen, West Fargo, for defendants, third-party plaintiffs and appellants; argued by Daniel Wentz, West Fargo.

ERICKSTAD, Chief Justice.

This is an appeal by the defendants, Jacklitch & Sons, Inc. and LeRoy Jacklitch (herein referred to as Jacklitch), from a judgment of the District Court of Richland County, dated April 14, 1981, in favor of the plaintiffs, Richard and Edith Cook. We affirm.

During August, 1979, the Cooks entered a written contract to have Jacklitch build them a new home in Wahpeton. Jacklitch's wife, Mercedes, drafted the contract and also made drawings which outlined the dimensions of the proposed home and its rooms. Construction of the house began and continued until November 12, 1979, when the Cooks ordered Jacklitch to cease construction and to leave the site. On that date the work had progressed such that the cement basement foundation had been poured, the wood sill plate, joist, and wood flooring had been placed, and part of the two-by-four framing on the main level had been constructed.

Thereafter, the Cooks filed an action against Jacklitch asserting that the completed construction on the house had been negligently performed. Jacklitch filed a counterclaim asserting that the Cooks, by wrongfully terminating construction, had breached the contract. Subsequent to trial, the Cooks amended their complaint to include a claim for breach of warranty.

The trial court determined that Jacklitch had failed to substantially perform the contract and had breached an implied warranty that the house was fit for its intended purpose. The court further determined that the Cooks were justified in rescinding the contract. In its judgment the trial court dismissed Jacklitch's counterclaim and awarded the Cooks $2,500 as compensatory damages for the expense of removing the foundation and filling the excavation.

On appeal Jacklitch has raised the following issues:

(1) Whether or not the trial court's finding that Jacklitch failed to substantially perform the contract is clearly erroneous;

(2) Whether or not the trial court erred in its refusal to grant Jacklitch compensation on a theory of *quantum meruit*; and

(3) Whether or not the trial court's finding that LeRoy Jacklitch is individually liable on the contract is clearly erroneous.

A buyer has a right to rescind the contract if the contractor fails to substantially perform. *Robertson Companies, Inc. v. Kenner*, 311 N.W.2d 194 (N.D.1981). In *City of Granville v. Kovash, Incorporated*, 118 N.W.2d 354 (N.D.1962), at syllabus number 4, this Court defines substantial performance:

"4. In order that a building or construction contract shall be considered to be 'substantially performed,' it must appear not only that the contractor endeavored to perform the contract in good faith, but also that he has in fact done so, except as to unimportant omissions or deviations which are the result of mistake or inadvertence and which were not intentional."

The question of whether or not a contractor has substantially performed is a question of fact, and the trial court's finding in this regard will not be upset on appeal unless it is clearly erroneous. Rule 52(a), N.D.R. Civ.P.; *Robertson Companies, Inc. v. Kenner*, 311 N.W.2d 194 (N.D.1981); *Dittmer v. Nokleberg*, 219 N.W.2d 201 (N.D.1974).

In this case the trial court found that Jacklitch had failed to substantially perform the contract on the work completed prior to termination of the contract by the Cooks. The court based its determination on the following underlying findings of fact:

"7. After the foundation was poured and after it was covered with the wood sill plate, joists and wood flooring, various problems appeared which included the following:

(1) The concrete work was not of good quality. Forms used were old and in a state of disrepair.

(2) One or more of the walls were bowed so that the sill plate either extended over the foundation wall or the wall extended out from the plate.

(3) The tops of the foundation walls were not level nor made level by proper grouting. The sill plate, therefore, did not rest evenly on the foundation walls. One Exhibit also indicated that the joists did not rest properly on the sill plate. As a result, the floors constructed would not be level and there would be a possibility that walls would crack.

(4) One of the basement walls was improperly placed so that, if uncorrected, it would mean that the kitchen, already small, would be 8 inches smaller. This could be corrected only by removing and replacing the wall or cantilevering one side of the house.

(5) The house that the Cooks ordered, and which Jacklitch agreed to build, could not have been built on the lot selected and comply with the building codes of the City of Wahpeton. The plans called for the garage floor to be on the same level as the foyer and the family room. If the house were so constructed, either: (1) the basement would be so low that it would be below the water table, or (2) the garage and driveway would be so high that it would be in violation of the Wahpeton building codes and, in any event, aesthetically offensive to the neighborhood. The garage floor was, therefore, placed at a lower level than that called for by the original contract."

Jacklitch asserts that there was insufficient expert testimony or other evidence to support the trial court's finding that Jacklitch failed to substantially perform the contract. We disagree.

Robert Brungardt, Wahpeton city building official, whom the parties stipulated as an expert on the Wahpeton building code and on the construction of private, single family dwellings, testified on behalf of the Cooks, in relevant part:

"Q. Showing you Plaintiffs' Exhibit 6, do you recognize that, and please tell us what you see.

"A. Unleveled foundation. There's no support on the sill plate at all.

\* \* \* \* \* \*

"Q. What kind of difficulty does that present?

\* \* \* \* \* \*

"A. Well, it would eventually—the floor would be uneven. It would settle, and you have a wavey [wavy] floor, and the walls would be the same thing.

\* \* \* \* \* \*

"Q. Had someone indicated to you prior to that time that that wall was in the wrong place.

"A. Yes, both the Cooks were complaining that it was in the wrong place, and Jacklitch himself visited about it and told him that that wall could be moved.

\* \* \* \* \* \*

"Q. What kind of difficulties would you anticipate if you made a repair of a poured concrete wall in Wahpeton, North Dakota, similar to what was suggested for this particular site?

"A. Well, I could foresee moisture problems there. This area has a high water table so we could have moisture problems if it was moved.

\* \* \* \* \* \*

"Q. Is the foundation that has this grouting on it as good as one that's been poured levelly to begin with?

"A. The grout eventually, the peel-off will chip out.

"Q. And consequently the gaps that are indicated like on that photo would ultimately appear again, wouldn't they?

"A. Yes.

"Q. And the result of that sill gaping or being wavey [wavy] would be what to the walls and the ceilings?

"A. You'll have wavey [wavy] walls, unlevel floors.

\* \* \* \* \* \*

"Q. (Mr. Bailey continuing) Mr. Brungardt, in your previous examination by counsel you indicated that the movement of this particular foundation wall where it was off eight inches was referred as a patched job by the Cooks; is that correct?

"A. That's true.

"Q. Okay. And in fact, isn't that what you've testified here today that it is—that you're going to have water leaking there and it's a patched job?

"A. That's what's going to be, yes.

"Q. And you're going to have a perennial problem that will never go away?

"A. That's true.

"Q. And haven't you also testified that you're going to have a perennial problem with the grouting? If you put that in that's always going to be falling out and getting away?

"A. You'll have a problem, yes."

The Cooks also testified as to how the completed construction work did not comply with the contract. Although Jacklitch introduced expert testimony to refute Mr. Brungardt's testimony, the trial court was not bound to accept as fact all or any part of that testimony. *Gardebring v. Rizzo*, 269 N.W.2d 104 (N.D.1978). Upon reviewing the entire record, including the foregoing expert testimony of Mr. Brungardt, we conclude that the trial court's finding that Jacklitch had failed to substantially perform the contract, justifying termination of the contract by the Cooks, was not clearly erroneous.

Jacklitch asserts that the trial court erred in refusing to award him compensation for the partially completed construction on a theory of *quantum meruit*, and in support of his assertion Jacklitch relies upon the rationale of the Wisconsin Supreme Court in *Tri-State Home Improvement Company, Inc. v. Mansavage*, 77 Wis.2d 648, 253 N.W.2d 474 (1977). In *Tri-State*, the Wisconsin Supreme Court held that although the contractor failed to substantially perform the contract he should not have been precluded from bringing an action in *quantum meruit* to receive compensation for the home improvements received by the homeowners. In so holding the court reiterated the rule followed in prior Wisconsin decisions that the measure of quasi-contractual recovery available under a theory of *quantum meruit* "must never exceed the benefit actually received by the defendant."

■ Assuming, *arguendo*, that a contractor who fails to substantially perform the contract can receive compensation for the work performed on the quasi-contractual theory of *quantum meruit*, Jacklitch could not recover upon that theory in this case because the record does not demonstrate that the Cooks received any net benefit from the work performed by Jacklitch.

The defective construction work was determined to have been a substantial breach of the contract and resulted in a basement foundation which was unacceptable to the Cooks. The trial court determined that the expense of having the defective foundation removed and the excavation filled was equivalent to the value of the lumber of the partially constructed frame which was in the Cooks' possession. Consequently, the trial court awarded the lumber to the Cooks to offset their expense of removing the foundation and filling the excavation. Jacklitch asserts that the basement foundation was destroyed as a result of the Cooks' failure to heat the foundation during the winter months subsequent to their termination of the contract. Assuming Jacklitch's assertion in this regard is correct we conclude that it is irrelevant because the foundation was unacceptable and of no value to the Cooks at the time the contract was terminated. Any further damage to the foundation occurring subsequent to the contract termination and prior to its removal from the site is of no relevance in ascertaining whether or not the Cooks received any benefit from Jacklitch.

We conclude that the trial court did not err in refusing to award compensation to Jacklitch on a theory of *quantum meruit*. The Cooks did not receive any net benefit from Jacklitch's partial performance on the contract, and Jacklitch is therefore not entitled to a quasi-contractual recovery.

Jacklitch also asserts that the trial court's finding that LeRoy Jacklitch is personally liable on the contract is clearly erroneous. The contract is three pages in length and is hand written by Mercedes Jacklitch, LeRoy Jacklitch's wife. At the top of the first contract page, in Mercedes' hand writing, is the following:

"Jacklitch & Sons Inc.

Campbell, Minn."

The contract is signed by LeRoy Jacklitch on a line designated as "authorized signature" as follows:

"Authorized signature /s/ LeRoy Jacklitch"

Although the title Jacklitch & Sons, Inc., is placed at the beginning of the contract there is no reference to Jacklitch individually or to the corporation throughout the substantive portion of the contract. Although LeRoy Jacklitch signed on a line designated "authorized signature" his signature is not accompanied by any designation that he was signing as agent for or on behalf of the corporation. We conclude that the contract in this case is ambiguous with regard to whether or not the parties intended that LeRoy Jacklitch be individually liable on the contract.

Because the contract is ambiguous in this regard the determinative question is whether or not the parties' intent, established through extrinsic evidence, was to hold LeRoy Jacklitch, as the signing party, individually liable on the contract. *Ristvedt v. Nettum*, 311 N.W.2d 574 (N.D.1981). The question of intent is a factual issue to be determined by the trial court as the trier of fact and will not be set aside on appeal unless it is clearly erroneous under Rule 52(a), N.D.R.Civ.P. *Ristvedt, supra.*

The record includes evidence that the Cooks believed they were contracting with LeRoy Jacklitch individually and that there was no discussion between the Cooks and LeRoy Jacklitch that LeRoy was entering the contract as an agent of the corporation or that he did not intend to be personally liable on it. Furthermore, LeRoy Jacklitch's signature on the contract does not include any words or other demarcations to show that he was signing only in a representative capacity as an agent of the corporation. Based upon the foregoing evidence we conclude that the trial court's finding that the parties intended LeRoy Jacklitch to be personally liable on the contract is not clearly erroneous.

In accordance with the foregoing opinion the judgment of the district court is affirmed.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.