## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF NEBRASKA.

## SEPTEMBER TERM, A. D. 1890.

---

PRESENT:

Hon. AMASA COBB, Chief Justice.
" SAMUEL MAXWELL, } Judges.
" T. L. NORVAL,

---

SAMUEL McLEOD, APPELLEE, V. HENRIETTA GENIUS, APPELLANT.

[FILED DECEMBER 22, 1890.]

1. **Building Contract:** WAIVER. *Held*, That a provision in a building contract that "no new work of any description done on the premises, nor work of any kind whatsoever, shall be considered as extras unless a separate estimate in writing for the same before it is commenced shall have been submitted by the contractor to the superintendent and proprietor and their signatures obtained thereto," may be subsequently waived by the parties by parol.

2. ———: EXTRA MATERIALS: OWNER'S LIABILITY. The owner of a building is liable for work and materials furnished by the contractor in its construction not called for by the original written contract, where the owner, or his authorized agent, by a

1 (1)

subsequent oral agreement, promised to pay therefor, or knew that the contractor would charge for the same as extras, and assented thereto or permitted the same without objection.

3. ———: DAMAGES. When a contractor omits to furnish materials called for by his contract, he is liable therefor in damages to the owner.

4. ———: DELAY IN COMPLETION. A building contract provided for the completion of the building by a specified date, " provided there be no interference from labor strikes." It was *held*, that the fact,that the mechanics quit work upon the building on account of the contractor failing to pay them their wages as agreed, did not release the contractor from completing the building by the time agreed upon.

5. ———: REVIEW. *Held*, That the judgment to the extent of $719.62 is unsupported by the evidence.

APPEAL from the district court for Douglas county. Heard below before WAKELEY, J. .

*Holmes, Wharton & Baird,* for appellant.

*Howard B. Smith,* and *Clinton N. Powell, contra,* cited: *Adams v. Hill,* 16 Me., 215; *Vanderwerker v. R. Co.,* 27 Vt., 125; *Bartholomew v. Jackson,* 20 Johns. [N. Y.], 28; *Taylor v. Williams,* 6 Wis., 363; *Austin v. Wheeler,* 16 Vt., 95; *Dubois v. Delaware,* 12 Wend. [N. Y.], 334; *Mowery v. Starbuck,* 4 Cal., 274; *Seymour v. Long Dock Co.,* 5 C. E. Green [N. J.], 397; *Wallis v. Robinson,* 3 F. & F. [Eng.], 307; *Donlin v. Daegling,* 80 Ill., 608; *De Boom v. Priestly,* 1 Cal., 206; *Tetz v. Butterfield,* 54 Wis., 242.

NORVAL, J.

This an action to foreclose a mechanic's lien against the property of the defendant Henrietta Genius. The lien is claimed for labor performed and materials furnished under a written contract with the defendant for the erection of three brick tenement buildings. The original contract

price was $11,275. Subsequently the parties, by an additional or supplemental written contract, agreed that the plaintiff should receive $300 additional for certain alterations and changes agreed to be made by the plaintiff in the construction of the buildings. On September 1, 1888, another written agreement was made, whereby the plaintiff was to carry up the walls a foot higher, for which he was to receive $100. Afterwards, another written contract was entered into by the parties for other specified changes, for which the plaintiff was to receive the stipulated price of $41.50. The plaintiff claims that other changes and additions, not covered by the written contracts, were made during the progress of the work, at the special instance and request of the defendant, which considerably increased the cost of the buildings, and for which he asks compensation. The plaintiff also claims the sum of $3,683.50 as damages sustained by him on account of the discharge of a sub-contractor. The gross amount claimed from the defendant is $15,931.36. The plaintiff admits receiving payments to the amount of $10,731.99, and sues to recover a balance of $5,199.37.

The defendant admits in her answer her liability for the contract price and for the sum of $441.50 for extras; denies the item of $3,683.50 charged by the plaintiff, avers payments aggregating $10,932.24, and alleges that she has been damaged in the sum of $5,082, on account of poor workmanship, inferior materials, and the failure of the plaintiff to furnish certain items called for by the contract. The defendant further claims the sum of $720 as damages for the failure to complete the buildings within the time limited by the contract.

The cause was tried to a jury, who made special findings as follows:

"1. Is the plaintiff in this case entitled to any sum for extras above the amount agreed upon in the original and supplementary written contracts submitted to you in evidence?

"A. Yes.

"2. If he is, to what amount is he entitled?

"A. ($524.78) five hundred and twenty-four dollars and seventy-eight cents.

"3. Is the defendant in this case entitled to any credits for moneys paid not allowed her by the plaintiff?

"Yes.

"4. If she is, to what amount is she entitled?

"A. ($323.25) three hundred and twenty-three dollars and twenty-five cents.

"5. Did the plaintiff complete the houses according to his original contract and the plans and specifications?

"A. Yes.

"6. If he did not, to what amount of damages is the defendant entitled by reason of such failure on the part of plaintiff?

"A. Nothing.

"What was the total amount of the contract price provided for in the written contracts?

"A. $11,816.50.

"7. Is there anything due the plaintiff for the work and materials done and furnished, including extras, after deducting all credits, damages, and deductions to which defendant is entitled?

"A. Yes.

"8. If he is, how much is due?

"A. $1,397.94 includes interest; one thousand three hundred and ninety-seven dollars and ninety-four cents."

The court overruled the defendant's motion for a new trial and modified the verdict by reducing the amount for extras from $524.78 to $199.28; reduced the amount that defendant is entitled to as credits for moneys paid and not allowed her by the plaintiff from $323.25 to $200.25, and reduced the amount due the plaintiff to $1,058.16. A decree was entered for the last named sum.

There is no testimony to support the item of $3,683.50,

charged by the plaintiff in his petition as damages for the discharge of subcontractor Hall. The evidence offered for that purpose was excluded by the trial court. Nothing was therefore allowed the plaintiff upon that claim.

The decree gave the plaintiff as compensation for extras, $199.28, in addition to the sum of $441.50, which the defendant in her answer admits was for extras furnished under the written contracts of the parties. Of the item of $199.28 allowed by the decree, the sum of $37 is admitted in the evidence. While, as to the balance of the sum allowed by the court, the testimony relating thereto is conflicting, it is sufficient to sustain the findings, and will be accepted by us as final. It is not claimed that the extras, which are disputed by the defendant, were furnished under any written contract. It is, however, insisted by the defendant that, under the sixth paragraph of the original contract, no recovery can be had for additional work done on the buildings, except the same was previously agreed upon in writing. The paragraph referred to provides that "No new work of any description done on the premises, nor work of any kind whatsoever, shall be considered as extras unless a separate estimate in writing for the same, before it is commenced, shall have been submitted by the contractor to the superintendent and proprietor and their signatures obtained thereto; and that the contractor shall receive payment for such work as soon as it is done."

There is in the record testimony tending to show that during the progress of the work several changes in the buildings were made by the plaintiff at the request of the defendant's son, Richard M. Genius, who had charge of the business for her, which alterations considerably increased the expense. As to part of the alterations made, it was expressly agreed at the time that the plaintiff should receive pay therefor, and as to the others it was known to the defendant's agent that they were not to be made without compensation. The testimony justifies the conclusion

that the stipulation contained in the written contract was waived, and an independent contract was made, whereby the plaintiff was to perform labor and furnish materials not mentioned in the original agreement, and that the defendant was to pay for the same. It cannot be doubted that the owner of a building is liable for work done and materials furnished by the contractor, not called for by his original contract, where the owner or his agent by a subsequent oral agreement promised to pay therefor, or knew that the contractor would charge for the same as extras, and assented thereto, or permitted the same without objection. But he cannot recover as for extras for changes and additions without making known to the owner or agent that he would expect pay.

From the evidence we conclude that the total amount to which the plaintiff was entitled under the original contract, and also for extras, is the sum of $11,915.78. As against this, the plaintiff in his petition gives the defendant credit with payments to the amount of $10,731.99. The evidence shows that she made other payments amounting to $200.25. This leaves a balance in the plaintiff's favor of $983,54, exclusive of the defendant's claim for damages.

It will be observed that the jury found that the buildings were completed according to the contract. The defendant's entire claim for damages was rejected. It is urged by the defendant that improper materials were used; that the workmanship was bad; that some items specified in the contract were entirely omitted and that she was damaged by the failure to complete the job within the time limited by the contract. The testimony relating to the charge that the buildings were not completed according to the plans and specifications is too voluminous to give. The testimony of the defendant's witnesses went to show that the buildings settled, causing cracks in the walls; that soft bricks were used in the inside walls; that the lumber used for the inside finish was either wet and not kiln dried,

or that it was put on before the plastering dried, causing the joints in the wood-work to open up and present a bad appearance.

On the other hand, the testimony of the plaintiff and his witnesses tended to prove that the workmanship and materials were good; that the cause of the walls settling and cracking was owing to the footings under the walls being too light, and that they were put in according to the specifications. The walls were forty-five feet in height, with footings of but two feet in width. If improper footings were used to support the weight that was placed upon them, the fault was with the architect, and the contractor would not be liable for the damages caused thereby. From the testimony there can be no doubt that the buildings are in bad shape. But the evidence is too conflicting and unsatisfactory for us as a reviewing court to say that the fault was with the plaintiff. It is, however, undisputed that three pairs of inside and six pairs of outside blinds, called for by the plans and specifications, which form a part of the contract, were never furnished. The defendant was entitled to a credit for their value, which the evidence shows to be $35.

The only remaining point to be considered is the defendant's claim for damages for failure to complete the buildings within the time named in the contract. The contract provided that they should be finished "on or before the first day of October, 1887, providing there be no interference from labor strikes. * * * Should the contractor fail to finish the work at or before the time agreed upon, he shall pay to or allow the proprietor by way of liquidated damages, the sum of $5 per each and every day thereafter."

The first contract providing for changes and alterations extended the time one week for finishing the work. The witnesses agree that the buildings were not completed and turned over to the defendant until about the 7th of Feb-

ruary, 1888. The plaintiff upon the trial sought to establish that the delay was occasioned by reason of labor strikes, and this without pleading such an excuse. The proof fails to justify the claim that the "labor strikes" interfere with the progress of the work. True, the men engaged upon the brick-work ceased to labor, but it was occasioned by the contractor failing to pay the men their wages when due. As soon as they were paid, which was within two or three days after they quit, the work went on as before. It is evident that it was not contemplated by the parties that delay caused by the failure of the contractor to pay his men was to excuse the completion of the buildings.

The plaintiff cannot interpose his own default as an apology for not keeping the contract. The testimony shows that the building would have rented for more than the damages stipulated for in the contract. The work was delayed 122 days, which, at the stipulated price of $5 a day, makes her damages $610. She is entitled to offset this sum against the plaintiff's claims. The plaintiff is therefore entitled to a lien for the sum of $338.54, with seven per cent interest thereon from February 7, 1888. The decree will be modified accordingly, and as thus modified is affirmed.

JUDGMENT ACCORDINGLY.

THE other judges concur.