LINCOLN STONE & SUPPLY COMPANY, APPELLANT, v. MAUDE M. LUDWIG ET AL., APPELLEES.

FILED DECEMBER 24, 1913. No. 17,423.

1. **Contracts**: BUILDING CONTRACT: ACTION FOR PRICE: COUNTERCLAIM. Where a party contracts with another to build him a dwelling-house, and to that end furnishes the plans and specifications therefor, a claim that the work was done according to the plans and specifications is not available as a defense to a counterclaim or set-off for damages for a defective construction of the building.

2. ———: ———: BREACH: MEASURE OF DAMAGES. In an action for

breach of a building contract for alleged improper construction, the owner's measure of damages is the difference between the value of the building when constructed and what its value would have been if constructed according to contract, and with reasonably sound material and reasonably skilful workmanship.

3. Evidence examined, its substance stated in the opinion, and *held* sufficient to sustain the judgment of the trial court.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*C. S. Polk,* for appellant.

*S. L. Geisthardt, contra.*

BARNES, J.

This was an action in the district court for Lancaster county to foreclose a mechanic's lien for the sum of $417.14, alleged to be due the plai..'iff on a contract for the erection of a dwelling-house for the defendants. By the terms of the contract defendants were to pay plaintiff the sum of $3,000 for the completion of the work. It was alleged that defendants had only paid plaintiff the sum of $2,610, and had failed to pay the balance of $390, although often requested so to do.

It appears that plaintiff had duly perfected its mechanic's lien on the premises, and that fact was not denied. The defendants, by their answer, claimed $2,000 damages for a breach of the plaintiff's contract in failing to properly construct the house in question. The defendant's allegations were denied by the plaintiff's reply. The cause was tried to the court without the intervention of a jury, and after the evidence was concluded, by the request of both parties, the presiding judge viewed the premises. The court found that the plaintiff had failed to construct the building according to the specifications contained in the written contract, and awarded the owner, Maude M. Ludwig, a judgment for $1,000, and canceled the plaintiff's lien. The plaintiff has appealed, and now contends

that there was no competent evidence of any proper measure of damages.

The testimony clearly shows that the construction was in many respects defective, and that plaintiff had failed to comply with the terms of his contract. One of the defendants' witnesses was a Mr. Tyler of this city, who is an architect and builder of many years' experience. He testified as to the condition of the building, and by his evidence it appears that there were two cracks in the east wall, one over the kitchen door and one over the French window; that there was also a crack in the angle of the projection on the north side of the house. He gave the length of those cracks in detail, showing the separating of the walls and the cracks in the plastering. He also testified that there were stains on the plaster from water that had come through the cement blocks, of which the house was constructed. He estimated the north wall as being from three to three and one-half inches out of plumb. He said that the other walls were out a little. He condemned the flat roof; but it appears that the roof was constructed in accordance with the specifications. The witness considered that the cement blocks were a fair average lot, but testified that they were not properly laid in the construction. He also testified that the floors had settled and were sloping; and also described many other defects in the construction.

The defendant Walter Ludwig testified as to the manner and method of construction, and claimed that he had repeatedly called the plaintiff's attention to matters that were unsatisfactory to him, but could get its foreman to pay no attention to them. He described the condition of the house shortly after it was completed, and gave evidence of its defective condition. He also testified that the specifications and plans were made by Mr. Lahrack, who was the plaintiff's foreman. He showed that the building was left in a defective condition; that the blocks were poorly laid; and he testified that you could see daylight anywhere in the house through the blocks; that the joints were not

properly filled; that many of the blocks were cracked; that the specifications called for wire lath to keep the corners from cracking, and no such wire lath was used; that the outer walls are bulging out, and that the east wall will eventually fall down; that the north wall is three inches out of plumb; that there is not a square joint in the corners of the building; that the mantel has fallen down and is thrown out into the alley; that the stones are so cracked that when it rains the wind drives the moisture in across the floor; that it rains through on the north and east side of the house, and that the day after the house was turned over to the defendants it rained in so that it had to be wiped up from the floor. He also testified that he could turn the hose on the side of the house and in five minutes the water would be in on the floor; that the interior is mouldy, and the plastering is turning yellow and green, and the porch is falling away from the house, and the joints are all poor; that on the east side of the house the pointing is all crumbling, and on the south side it is practically gone; that the floors are not even in any part of the house, and you cannot set a chair or table down without its rocking; that there are cracks in the wall of over a half of an inch; that the plastering is cracked, and on the east side one can see clear through the wall; that the house has settled so that you cannot lock the doors; that the upstairs is divided into three rooms, a large room running east and west, and a bedroom; that you can stand in this bedroom and see the sky through the cracks in the east wall. This testimony was corroborated in part by the witness Tyler, by one G. J. McDougal, who was a carpenter and contractor who did work on the house, and T. P. Harrison, who was also a contractor and had been in the business for some 26 years.

On the measure of damages, Charles T. Knapp testified that he was in the real estate business, and had lived in Lincoln for nine years; that he was well acquainted with the value of buildings and property in this city; that he was acquainted with the Ludwig house, and had examined

it inside and out; that he was acquainted with the value of buildings and property in this locality, and the building as built is in a dilapidated condition. The floor had evidently sunk away from the partitions; there were a good many cracks in the sides of the house and in the plastering and walls, and that you could see daylight "clean through." Two of the walls were somewhat out of plumb, and the mortar had washed out of the east wall to some extent; that one of the mantels had fallen down and had practically fallen to pieces; that there were cracks in the cement floor, and the window and door casings were all loose; that the condition of the house would impair its market value; that the depreciation in value, compared with what it would have been worth if built in a substantial condition, would be fully $2,000; that to make a good job the house would have to be torn down and rebuilt.

E. P. Hovey testified that he was engaged in the insurance and real estate business, and had been for 15 years, in the city of Lincoln; that he was acquainted with the value of real estate in this city during all of that time. He said: "I have examined the Ludwig property in controversy, both inside and out. I examined it for the purpose of ascertaining its value. The walls seem to be settled or fallen away so that there was a large crack so that you could see daylight; also discolored walls indicating that the water came through. * * * Am acquainted with the value of property in this locality, and was two years ago. * * * If the building was in the same condition two years ago as now I would say that it was only worth one-half price. If the house had been properly constructed it would be worth not far from $5,000; I certainly would not give more than $2,500 for it when I saw it."

As opposed to this testimony, the plaintiff claimed that it had constructed the house in question according to the plans and specifications. It developed, however, in the testimony that plaintiff, by its foreman, Lahrack, fur-

nished the plans and specifications on which the house was built, and therefore this defense is unavailable. Lahrack testified that he had not examined the interior of the house since the fall it was completed; that he observed at that time that the floor joists had been cut in order to install a heating plant, and that would cause the outside walls to bulge; that the original plans for the building were two feet larger each way, and the floor joists were to be 2 by 10; that afterwards they changed the plans so as to make the house two feet smaller and reduce the cost to $3,000, and that the floor joists used in the construction were then 2 by 8, instead of 2 by 10. His testimony described the manner of the construction, and he claimed that the bulging of the walls and cracks were caused by the settling of the partitions and cutting the joists; that if wire lath was used and the partition did settle, instead of breaking small cracks in the angle it would have opened as far as the lath extended and the plastering would have fallen off. The material for pointing a house is Portland cement and fine sand; that white cement sets too fast to be easily worked; that the porch which is falling away is not provided for in the specifications. His testimony was supported to a certain extent by the testimony of H. S. Allsbrow and Samuel Vincent, who was the foreman who had charge of the work when the house was constructed. The defendants' witnesses all testified that they saw no joists cut for installing the heating plant.

It will thus be seen that there was a sharp conflict in the testimony as to the manner of the construction of the house, and the condition in which it was left when completed. It was provided by the terms of the contract that in case of any disagreement between the owner and the contractor as to any of the provisions of the contract or of the plans or specifications, or of any payment thereunder, the disagreement should, at the request of either party, be submitted to the arbitration of three men, each party to select one, and the two to select a third, and the

decision of said board of arbitration should be final; and it was agreed that each party should pay one-half of the expense of such arbitration, regardless of the decision. Defendants alleged that they had offered to arbitrate the question in dispute with the plaintiff, and that plaintiff had declined to take any action in that behalf. It was agreed in the contract that all work and material used in the construction of the house in question should be first class, and the work should be done in a workmanlike manner.

It is evident from a reading of the record that the plaintiff did not comply with the terms of the contract, and that the defendants were entitled to recover a substantial amount of damages therefor.

In *Hartford Mill Co. v. Hartford Tobacco Warehouse Co.*, 121 S. W. (Ky.) 477, it was said: "In an action for breach of a building contract for alleged improper construction, the owner's measure of damages is the difference between the value of the building when constructed and what its value would have been if constructed according to contract, and with reasonably sound material and reasonably skilful workmanship."

In *Small v. Lee & Bros.*, 4 Ga. App. 395, 61 S. E. 831, it was said: "Where a builder has in good faith intended to comply with a contract and has substantially complied with it, although there may be slight defects, caused by a misconstruction of the terms of the contract, and the house as built has been received by the owner, and is reasonably suited for the purposes intended, the contractor may recover the contract price, less the damage on account of such defects. In such case the true measure of damage is the difference between the value of the house as finished and the house as it ought to have been finished under the contract, plans, and specifications." This rule is supported by *Norcross Bros. Co. v. Vose*, 199 Mass. 81; *Fleming v. Lunsford*, 163 Ala. 540, 50 So. 921; *Morton v. Harrison*, 52 N. Y. Super. Ct. 305; *Moulton v. McOwen*, 103 Mass. 587; *Norway Plains Savings Bank v. Moors*, 134 Mass. 129.

From an examination of the authorities, we conclude that the testimony of the defendants' witnesses as to the measure of damages was competent, and was properly received.

Again, it must be remembered that the trial court examined the premises, and thus gained a knowledge of the conditions there existing, which are not available to this court; and, in view of this fact, together with evidence contained in the record, it cannot be said that the evidence fails to support the judgment rendered by the trial court, and it is therefore

AFFIRMED.

LETTON, FAWCETT and HAMER, JJ., not sitting.