JOHN F. GATCHELL, DOING BUSINESS AS GATCHELL ELECTRIC
& HARDWARE CO., APPELLEE AND CROSS-APPELLANT, V.
ALVINA HENDERSON ET AL., APPELLANTS AND CROSS-
APPELLEES, IMPLEADED WITH HARRY Z. WEST,
APPELLEE.

54 N. W. 2d 227

Filed June 27, 1952.   No. 33161.

*Morgan & Carnazzo,* for appellants.

*Spier, Ellick & Spire,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, a subcontractor, brought this action against defendants Alvina Henderson and Carl M. Henderson, owners of Lots 65 and 66, Wyman Heights, an addition to the city of Omaha, and also against defendant Harry Z. West, the contractor who constructed a house thereon for them, seeking to recover a judgment against defendants and to foreclose a mechanic's lien for the reasonable value of electrical wiring, installations, and fixtures furnished the contractor by plaintiff, and to obtain general equitable relief.

Insofar as important here, the owners defended upon the ground that all contracts for material furnished or labor performed by plaintiff were wholly with their contractor and that plaintiff's purported mechanic's lien

was invalid and unenforceable because not filed "within sixty days from the performing of such labor or furnishing such material," the time required by section 52-102, R. S. 1943. The owners also timely filed a cross-petition against the codefendant contractor seeking to recover $260 as damages for alleged breach of contract by him. In that connection they alleged and testified that they had in their hands $322.19, the final balance still due and owing the contractor, and asked the trial court to make disposition thereof. They prayed that such damages aforesaid should be proportionately offset against such sum, and for general equitable relief.

Defendant contractor, although initially served with summons, defaulted both upon plaintiff's petition and defendant owners' answer and cross-petition. Further, defendant owners' right or manner of proceeding by cross-petition was never tested or raised in any manner by anyone in the trial court, either before or after decree was entered, but was raised by plaintiff for the first time in this court on appeal.

In that connection, there are two rules which preclude a decision thereon in this court. First: "An issue not presented in the trial court may not be raised for the first time in the Supreme Court." Freeman v. City of Neligh, 155 Neb. 651, 53 N. W. 2d 67. Second, as stated in 30 C. J. S., Equity, § 387, p. 804: "An irregularity in a cross bill or in proceeding by cross bill, or as to the time at which a cross bill is filed, is waived by permitting the case to progress to hearing or decree without objection."

A hearing was had whereat evidence was adduced upon the issues presented by plaintiff's petition and defendant owners' answer and cross-petition, and the trial court rendered a judgment which denied foreclosure of plaintiff's alleged mechanic's lien but awarded a judgment against defendant contractor in favor of the plaintiff for $563.95, the reasonable value of labor and material furnished to him by plaintiff, and awarded

defendant owners a judgment against the codefendant contractor for $260 damages, as prayed in their cross-petition.

However, the judgment denied defendant owners the right to set-off such damages against the amount of $322.19 then admittedly owing by them to defendant contractor, but instead, upon a basis of purported equity and justice, ordered said sum forthwith paid to the clerk of the district court, all to be proportionately applied upon plaintiff's judgment against defendant contractor, and taxed all costs equally between plaintiff and such contractor.

True, as argued by plaintiff, no summons was issued on the cross-petition against the codefendant, but none was necessary since the pleadings herein were timely filed and decree was not taken until long after time to plead thereto had elapsed.

As stated in Farmers Mutual Ins. Co. v. Gumaer, 109 Neb. 832, 192 N. W. 941: "In Cockle Separator Mfg. Co. v. Clark, 23 Neb. 702, it was held that, when a defendant filed his answer against his codefendant in the nature of a cross-petition, although no summons need be issued thereon, yet the co-defendant is entitled to the same time to plead thereto as though the defendant filing the answer was plaintiff and the codefendant sole defendant, and that a decree taken before the time to plead was erroneous." By analogy, of course, a decree taken after the time to plead has elapsed, as in the case at bar, would not be erroneous.

Defendant owners timely filed a motion for new trial, assigning substantially that such part of the judgment relating to offset as appears in the last paragraph thereof aforesaid, was not sustained by the evidence but was contrary thereto and contrary to law. Such motion was overruled and they appealed, making like assignment here which we conclude should be sustained. On the other hand, plaintiff also timely filed a motion for new trial, assigning substantially that the judgment con-

cluding that plaintiff was not entitled to foreclosure of a mechanic's lien was not sustained by the evidence and contrary to law. Such motion was overruled and plaintiff cross-appealed, making like assignment of error. We conclude that such assignment should not be sustained.

We turn first to plaintiff's cross-appeal to discuss and determine whether or not the trial court erred in concluding that plaintiff was not entitled to foreclosure of his mechanic's lien, because if the lien were valid then distribution of $322.19 in defendant owners' hands would concededly be immaterial to plaintiff. In doing so, we observe the rule that: "Actions in equity, on appeal to this court, are triable de novo, subject, however, to the rule that when credible evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite." Wiskocil v. Kliment, 155 Neb. 103, 50 N. W. 2d 786.

In that regard, the sole question which we are required to decide is whether or not the mechanic's lien of plaintiff concededly filed January 5, 1950, was filed within the time required by section 52-102, R. S. 1943. In other words, was it filed "within sixty days from the performing of such labor or furnishing such material * * * including * * * electrical apparatus and lighting fixtures * * *." We conclude that it was not.

The respective agreements between plaintiff and the contractor and between the contractor and defendant owners do not require particular discussion. The mechanic's lien here involved recites that: "the first item furnished and delivered was September —, 1949, and the date of the last item was December 9, 1949." As a matter of fact, both dates were concededly erroneous. Plaintiff admits that the first item was furnished on December 10, 1948, the next December 30, 1948, then March

4, 1949, then March 9, 1949, then August 31, 1949, then September 9, 1949, when the house was purportedly completed, on which date the switches, receptacles, and fixtures were installed by plaintiff in order to complete the job. On that date plaintiff rendered a statement or invoice dated "9/8/49" to "Harry Z. West" the contractor, showing the balance due complete for job $563.95. Such sum was the exact amount subsequently claimed due in his purported mechanic's lien. Also, before the owners moved into the house on September 14, 1949, plaintiff told them that the contractor owed him $563.95. Concededly plaintiff made no charge for any item furnished after September 9, 1949, but claimed that on November 19, 1949, his employee son finished the doorbell wiring and checked to see that everything was completed. That is the date on which plaintiff claimed that the last item was furnished. In that connection the evidence is conflicting, but there are signposts appearing therein from which the truth can be reasonably ascertained.

To support the son's evidence that he connected up the wiring on the doorbell on that date, a page of his daily shop timebook was received in evidence. The last entry on November 19, 1949, reads: "9403 No. 30 st. 1½" hours. The address is that of the property here involved. However, the son did not testify directly when the particular entry was made by him, but only inferred that it was made after work on that date. He testified that on that date he left a job at 4519 North 30th Street, which is not recorded on the time sheet as one worked on that date, and drove to 9403 North 30th Street, connected the wiring on the doorbell, and drove back to 4519 North 30th Street again, all of which time was included in the one and one-half hours allegedly spent in performing the last item. Concededly, Alvina Henderson called plaintiff's store, telling someone that the doorbell would not ring, and the son "went out there to repair it." Also, concededly he might have said to

her upon arrival: "'I am sorry, the only thing that I neglected to do was to connect these wires.'" However, he claimed that it occurred on November 19, 1949.

On the other hand, defendant Alvina Henderson testified that the house was completed and they moved into it on September 14, 1949. They then tested the doorbell and noticed that it did not ring, so they called plaintiff, whereupon the very next day, Thursday, September 15, 1949, plaintiff's son came out and connected it. At that time he said: "I forgot to connect the bell." Thereupon he unscrewed and connected it, which took him only 10 or 15 minutes. The bell then rang as it should, and that was the last time plaintiff or his employees ever came to the house or did any work there. Her husband, Carl M. Henderson, corroborated such testimony, saying that they also called the contractor, telling him that the bell did not ring. A woman who stayed with the Hendersons and moved in with them on September 15, 1949, testified that the doorbell did not ring at first but it was fixed right away; she could not remember the exact day; and that it then rang all right. All of such evidence appears to be entirely logical and credible.

In rebuttal plaintiff's son testified that he was not at the property involved on September 15, 1949, but worked nine hours, one hour overtime, elsewhere on that date. To support such contention another page of the time record book was received in evidence, which read: "9-15-49 Martin Apt. 9" hours. However, the date "9-14-49" has clearly been changed to "9-15-49" and the figure "9" representing the hours worked, has been written over another indistinguishable number. The son's apprentice testified that he also kept a record of time spent in connection with his work for plaintiff with the son from September 9, 1949, and subsequently, and such record was received in evidence to support a claim that they worked at the Martin Apartment nine hours on September 15, 1949. It read: "9/15/49 Martin

Apt. 9 hr." However, the figure "15" has been written over another indistinguishable number and above it appears "9-14-49 Martin Apt. 7½ hrs." The figure "14" however has been written over another indistinguishable number. All such evidence lacks credence.

In the light of the foregoing evidence we conclude that the last item was furnished in any event not later than September 15, 1949, more than 60 days prior to January 5, 1950, and that plaintiff was therefore not entitled to a mechanic's lien.

Concededly, a subcontractor must file "a sworn statement of the amount due him from said contractor" within 60 days from the date of the last material furnished to or labor performed for the contractor in order to perfect a mechanic's lien under the provisions of section 52-102, R. S. 1943. Disbrow & Co. v. Peterson, 136 Neb. 719, 287 N. W. 220. Plaintiff did not do so in this case.

Assuming for the purpose of argument only that plaintiff simply delayed connecting the doorbell from September 9, 1949, until November 19, 1949, we arrive at the same result. Clearly more than 60 days elapsed between September 9, 1949, when the work was supposed to have been finally completed and a bill in full was finally rendered by plaintiff to the contractor, and November 19, 1949, date of the purported last item. The risk of all payments made to the contractor was upon the owners until such 60-day period had expired, after which they could have paid the contractor in safety. The purpose of the statute is to protect the diligent subcontractor if he acts within the specified 60-day period. The rule is that when more than 60 days intervene between two items of a lien account, there is a presumption that all items following the hiatus were furnished under a separate contract, and the time for filing a mechanic's lien cannot be extended by tacking one contract to another. Disbrow & Co. v. Peterson, *supra*.

The facts and circumstances in Disbrow & Co. v. Peter-

son, *supra,* were comparable with those at bar. In that opinion it was said: "It is obvious that the statute does not contemplate a lien under the circumstances here shown. 'If the time which is restricted by the statute can be thus indefinitely extended by acts of this kind, the 60-day limitation fixed by the legislature in which to file this class of liens can and will be utterly and completely defeated, so that in every case where a right to file a lien has ever existed, the title to the property may for an indefinite period remain in an unsettled and not ascertainable condition, with reference to the character and extent of the mechanic's liens which may be claimed against such property.' Gem State Lumber Co. v. Witty, 37 Idaho 489, 217 Pac. 1027.

" 'After a contract is substantially completed there must be no unnecessary or unreasonable delay under all the circumstances in fully completing the work, and the time for filing a lien cannot be extended by a delay for a considerable time to do a small piece of work necessary to full completion.' 40 C. J. 198, and cases there cited."

See, also, Davidson v. Shields, 129 Neb. 877, 263 N. W. 490, a comparable case in which the contractor himself sought foreclosure of a mechanic's lien against the owner. In that opinion it was said: "The testimony of plaintiff's witnesses is that these valves might have been properly installed in January. The failure to install them at that time was the equivalent to the installation of defective material.

"It is the rule that a contractor cannot extend the time for filing a mechanic's lien by substituting proper material for defective material, previously furnished and charged to the owner. Ashford v. Iowa & Minnesota Lumber Co., 81 Neb. 561; Cady Lumber Co. v. Reed, 90 Neb. 293." Such rule also applies to a subcontractor as indicated in the two cases last cited in Davidson v. Shields, *supra.* Logically the rule is also that he cannot extend the time for filing a mechanic's lien by sub-

stituting proper labor or material for defective labor or material previously furnished and charged to the contractor. We conclude that the judgment of the trial court denying foreclosure of the mechanic's lien of plaintiff should be and hereby is affirmed.

We turn then to defendant owners' contentions. It will be observed that plaintiff's judgment against the contractor to whom plaintiff furnished labor and material by contract between them is not questioned. However, the judgment awarded the owners against the contractor upon their cross-petition for breach of contract should have been for $240 damages, since clearly only such amount was established by the evidence. § 25-842, R. R. S. 1943; State ex rel. Sorensen v. State Bank of Omaha, 128 Neb. 705, 260 N. W. 195. In that connection also there was no finding, and under the record before us there could have been none, concluding that the owners were personally liable to plaintiff in any manner. In other words, in the absence of an agreement express or implied otherwise binding them, which concededly there was not, there was no privity of contract between plaintiff subcontractor and the defendant owners. Frost v. Falgetter, 52 Neb. 692, 73 N. W. 12; Rosebud Lumber and Coal Co. v. Holms, 155 Neb. 459, 52 N. W. 2d 313. The effect of the judgment was nevertheless to conclude that plaintiff had no valid timely filed mechanic's lien or right to a personal judgment against the owners, but that he should have a lien upon $322.19, the balance of money concededly owing by the owners to the contractor, despite the fact that they could then have paid any part or all of it to the contractor with safety and that the contractor was concededly then indebted to such owners in the sum of $240 for breach of contract.

In at least two cases this court has concluded that an owner ordinarily has a right to offset damages for breach of contract against any sum of money due on his building contract with the contractor. McLeod v. Genius, 31 Neb. 1, 47 N. W. 473; Lincoln Stone & Supply Co. v.

Ludwig, 94 Neb. 722, 144 N. W. 782. To refuse to apply such a rule in this case was erroneous. To hold otherwise would require the innocent owners, who were guilty of no wrong whatever, to pay plaintiff $322.19 when there was no liability to him therefor or for any other amount, and, in addition, to sacrifice their lawful right to recoup or offset $240 against the amount in their hands concededly owing the contractor. Such order was neither justice nor equity.

This court, following Tarnow v. Carmichael, 82 Neb. 1, 116 N. W. 1031, has concluded that: " 'Equity will devise a remedy to meet emergencies, and will adjust the property interests of litigants whenever it can do so without prejudice to the legal or equitable rights of any person.' " Penn Mutual Life Ins. Co. v. Katz, 139 Neb. 501, 297 N. W. 899.

Also, as stated by this court in In re Estate of Williams, 148 Neb. 208, 26 N. W. 2d 847, after citing Nelson v. Janssen, 144 Neb. 811, 14 N. W. 2d 662: "Where, as here, a court dealing in equity has the property under its jurisdiction, it has the power to direct its application in order to carry out justice."

Under the situation presented in this case by the pleadings and evidence, the mechanic's lien of plaintiff was invalid and there was no privity of contract between plaintiff and defendant owners. Therefore, the trial court should have entered a judgment permitting and ordering defendant owners to offset their damages of $240 against $322.19, concededly the balance in their hands owing the contractor, and ordering the balance, $82.19, applied on plaintiff's judgment against the contractor. It is not assigned in either brief here that the trial court erroneously taxed costs in that court, and such order taxing costs there equally between plaintiff and defendant contractor will not be disturbed.

For the reasons heretofore stated, the judgment of the trial court should be and hereby is affirmed in part, and in part reversed and remanded with directions to

enter a judgment in conformity with this opinion. All costs in this court are taxed to plaintiff.

ALL COSTS IN THIS COURT ARE TAXED TO PLAINTIFF.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.